## C. W. VIERS, Appellant, v. LILLIE M. VIERS.

### Division Two, June 9, 1903.

1. **Husband and Wife:** RESULTING TRUST IN LAND: PROVISION FOR WIFE. Where the husband purchases real property with his own funds and causes the same to be deeded to his wife, and there is no intimation in the deed that it is to be held in trust for him, a prima facie case is made out that the husband intended the conveyance to be a provision or settlement for the wife, and not a resulting trust, as would arise if this relation did not exist.

2. ———: ———: ———: HOW OVERCOME: PAROL TESTIMONY. The presumption that the husband intended that land bought by his own money and conveyed to his wife is to be a provision or settlement

for her, may be overcome by parol testimony, but in order that that may be done such evidence must be clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor.

3. ——: ——: ——: ——: ——: CASE IN SUIT. Plaintiff had been previously married and had separated from his wife. He also had debts in another State. He testified that he bought the lands in suit, which were far away from his former residence and business, with his own means, and had it deeded to his wife with the intention of making it his homestead, and that she had since left him and sued for a divorce. His son by his former wife testified that the land was bought and the title placed in defendant, and paid for by plaintiff with his own money, for the express purpose of making it his future home. The wife testified that the land in question was her father's old farm, that he had died leaving her mother and eight children, and that the property was sold for delinquent taxes, and bought by her husband for her, partly with her own money, and partly with money given her by him. *Held*, that this evidence falls far short of the clear, strong and unequivocal kind required by the law to overcome the presumption that his purpose was to make a provision and settlement for the wife, but tends strongly to sustain that presumption.

Appeal from Taney Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Groom & McConkey* for appellants.

(1) Under the bill and answer in this case, the court having rendered judgment dismissing the bill, could not at the same time, render a decree divesting plaintiff of all right, title and interest in the lands, and the decree that the legal and equitable title thereto be fully and completely forever vested in the defendant in fee simple, as her separate property and estate, for this was more than defendant asked by her answer, which was only a general denial. (2) This is not a case of conflicting testimony, but one in which the verdict and judgment were directly contrary to all law and evidence. In such cases the Supreme Court will reverse such judgment. Dedo v. White, 50 Mo. 241. The ver-

dict and judgment in this case were manifestly against the law and the evidence, and there is virtually no evidence to support a judgment in favor of defendant. Ackley v. Staehlin, 56 Mo. 558. Under our statute the court in an equity case may give any relief consistent with the allegations of the pleadings. Mead v. Knox, 12 Mo. 247; Henderson v. Dickey, 50 Mo. 161; Ames v. Gilmore, 59 Mo. 537.

*R. C. Ford* for respondent.

This being an equitable proceeding, the bill and answer gave the court jurisdiction. Reyburn v. Mitchell, 106 Mo. 365. The doctrine is too well settled to admit of either discussion or dispute that where a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. It will not content itself in this regard by any halfway measures. Real Estate Saving Inst. v. Collonious, 63 Mo. 290; Corby v. Bean, 44 Mo. 379; Primm v. Raboteau, 56 Mo. 407. Where a husband buys lands and causes the deeds to be made to his wife, a prima facie case is made out that he intended it to be a settlement upon her, and not a resulting trust, as would arise if there was no such relation existing. Shuster v. Shuster, 93 Mo. 438; Inglefritz v. Inglefritz, 116 Mo. 429. While it is true that facts creating a resulting trust may be proved by parol, such evidence must be clear and unequivocal, and not merely preponderating. Kennedy v. Kennedy, 57 Mo. 73; Philpot v. Penn, 91 Mo. 38. The conveyance of the property in question to the defendant was a settlement upon her, and vested the title in her, so that the settlement could not afterward be revoked by her husband. Schouler on Husband and Wife, secs. 217, 383, 385, and 387; 2 Pomeroy's Equity, sec. 1039; Alexander v. Warrance, 17 Mo. 228; Hollacher v. Hollacher, 62

Mo. 268; Wood v. Broadly, 76 Mo. 31. The *onus* of establishing a resulting trust rests upon the party who seeks its enforcement, and where it is sought to establish such trust by parol evidence it must, to warrant a decree, be so clear, definite and positive as to leave no reasonable grounds for doubt. Philpot v. Penn, supra; Johnson v. Quarles, 46 Mo. 422; Jackson v. Wood, 88 Mo. 76; Forrester v. Scoville, 51 Mo. 286.

BURGESS, J.—The parties to this suit were at the time of the transactions mentioned in the petition, and also at the time of the trial, husband and wife. The purpose of the suit is to have a resulting trust declared in plaintiff's favor to certain lands described in the petition; to set aside and for naught held certain deeds, one from J. A. Weatherman, sheriff of Taney county, Missouri, to Lillie M. Viers, dated November 1, 1895, and recorded November 1, 1895, in book 1, at page 80, Taney county records; also one from Lillie M. Viers and C. W. Viers, her husband, to Madison B. Viers, dated May 2, 1898, and recorded June 4, 1898, in book 11, at page 456; also a deed from Madison B. Viers to Lillie M. Viers, dated May 5, 1898, and recorded September 26, 1898, in book 11 at page 537, Taney county records; and to invest title to said lands in the plaintiff.

The answer is a general denial.

The court below, after hearing the evidence, rendered judgment dismissing the plaintiff's bill, and decreeing title to defendant. Plaintiff filed motion to set aside the finding, and for a new trial, which motion was by the court overruled. Plaintiff appeals.

There is but little conflict with respect to the facts out of which this litigation grew, they being as alleged in the petition, with the exception of the purpose for which the land was purchased by plaintiff, and who furnished the purchase money.

Plaintiff testified in his own behalf as follows:

"I live in Taney county. In 1891 I was married to the defendant, Lillie M. Viers, at Hannibal, Mo., which place was my home at that time. I was then in the employ of the Hannibal & St. Joseph Railroad Company as locomotive engineer, and was receiving a salary of $115 per month. Up to the fall of 1895 I had saved up from my earnings, and had deposited in my own name in the Farmers' and Merchants' Bank of the city of Hannibal, the sum of $500, which amount I drew out of said bank some time during the latter part of October of that year and brought the same with me to Forsythe, Missouri, and deposited it in the Taney County Bank. On the 1st day of November, 1895, I purchased at sheriff's sale at Forsythe, the lands mentioned in this suit, for which I paid the sum of $118. I purchased the land for a home for myself, and caused the deed thereto to be made to my wife, Lillie M. Viers. In purchasing this land and in having the sheriff execute the deed to my wife, Lillie M. Viers, it was not my purpose or intention to settle this property upon her for her sole use and benefit, nor as a provision for her, but I had the same deeded to her in trust for my own use and benefit for a home. I bought and paid for the land with my own individual money, earned and saved by me at railroad work. Lillie M. Viers, my wife, never at any time put a dollar of her separate money or means into the purchase or improvement of this land or for the payment of the taxes. In all, I have invested between five and six hundred dollars in the purchase of this land and in the payment of current and back taxes against it, and for attorney's fees, attachment liens against the land, and traveling expenses from my home at Hannibal to Forsythe, in looking after it. In the summer of 1899 I left my wife in charge of my business in the city of Quincy, State of Illinois, where we resided together at that time, and I came to Taney county, and moved and settled on this land. But before leaving Quincy I had arranged with my wife

to remain there and close out our business, and sell the property I had left there in her charge, which was worth something like $600, and then she was to come to me upon the farm here in Taney county and bring the money with which we were to stock the farm. She at one time sent me $10 from Quincy, and in a very short time after I left there she ceased to write or correspond with me, and finally, in the fall of 1899, she instituted divorce proceedings against me in Adams county, Illinois, and wrote me that she never intended to live with me any more. The warranty deed from my wife and myself made to Madison Viers and dated May 2, 1898, and the one from Madison Viers to Lillie M. Viers, dated May 5, 1898, both of which purported to convey the land involved in this suit, were made wholly without any consideration whatever, and there was not a cent of either money or property exchanged on account of either conveyance. I am now in the lawful possession of this land, am living upon it and making it my home. My wife, Lillie M. Viers, who is the defendant in this case, refuses to live with me upon this land and she also refuses to longer live with me as my wife."

W. M. Wade, a witness for plaintiff testified as follows: "I am cashier of the Taney County Bank. Sometime about the latter part of October, 1895, the plaintiff, C. W. Viers, deposited five hundred dollars in the Taney County Bank and he drew the same out again about November 1, 1895. He purchased some land with it at a tax sale about that time. I know he bought the land for I stood by him when he bid the land in. This money was deposited in the name of C. W. Viers."

George L. Taylor, another witness for plaintiff said: "In the year 1895, I had an extensive correspondence with the defendant regarding the tax suit then pending against this land. The defendant employed me to look after the same and paid me fifty dol-

Vol 175 mo—29

lars for my services. The defendant did not attend the tax sale, but Mr. Viers was present and bid the land in under my supervision and instructions as attorney. Mr. Viers afterwards employed me to bring a suit in ejectment for the possession of this land, for which latter services I sued Mr. Viers and his wife by attachment in the circuit court of Taney county, and procured a judgment against both of them for $95."

The plaintiff then read from the deposition of Madison B. Viers, which was as follows, to-wit:

"State your name, age and place of residence? A. M. B. Viers, twenty-eight years, Kiowa, Baker county, Kansas.

"Q. How long have you resided in Baker county, Kansas, and in the city of Kiowa? A. About eight months.

"Q. Where did you live before you moved to Kiowa, Kansas, and how long did you live there? A. Quincy, Illinois, between four and five years.

"Q. Where did you live on or about the 2d day of May, 1898? A. Quincy, Illinois.

"Q. Are you acquainted with C. W. Viers and Lillie M. Viers, if so, state what relation, if any, each of them are to you? A. Yes; C. W. Viers is my father, and Lillie M. Viers is my stepmother.

"Q. Is your mother living at the present time? A. I don't know. My father and mother separated in 1884. I have not heard from my mother since.

"Q. Where did C. W. Viers and Lillie M. Viers reside on or about the 2d day of May, 1898? A. At Quincy, Illinois.

"Q. What was the consideration of the deed made by Lillie M. Viers and C. W. Viers, her husband, to you dated May 2, 1898, and which conveyed to you the northeast quarter and south half of northwest quarter and southeast quarter of sec. 14, and northwest quarter of northwest quarter of sec. 13, in township 24, range

22, in Taney county, Missouri? A. No consideration at all.

"Q. State how that deed came to be made to you, whether the transaction was made in good faith or fraudulent, and what amount of money or property you paid them, or was to pay them in consideration of them conveying this land to you? A. There was a piece of property lying on a creek bank that was in danger of being washed away. Said property was mortgaged by my father and secured by notes from Lillie M. Viers. This property mentioned in this conveyance was transferred to me for the sole object of defeating any judgment that might be rendered against Lillie M. Viers in case the property mortgaged failed to satisfy the debt. I did not agree to pay any money or property in consideration of the conveyance of the property described in the conveyance to me.

"Q. State how you came to execute a deed on the 5th day of May, 1898, conveying this same property back to Lillie M. Viers, whether this transaction was in good faith or fraudulent, and what amount of money or property you received from Lillie M. Viers in consideration of you making her a deed back for the same tract of land? A. I conveyed the property back to her in order to keep it in her name, but my deed to her was not to be recorded, and was not recorded, until after the mortgage given by my father upon the property on the creek bank was satisfied. There was no consideration for the conveyance, nor any property or money paid for the same.

"Q. You may state, if you know, how the property described in the conveyance came to be deeded to Lillie M. Viers in the first instance, and who paid for the same? A. My father was in trouble over several other pieces of property and this piece of land was bought and placed in the name of Lillie M. Viers and paid for by my father with his own money for the express purpose of making it his future home."

The defendant then testified in her own behalf as follows, to-wit:

"My name is Lillie M. Viers. I am the defendant in this case. I now reside in Quincy, Illinois. I am the lawful wife of the plaintiff, C. W. Viers. I was married to him at Hannibal, nine years ago. I have begun a divorce suit against him in Adams county, Illinois. The suit has never been determined, but is now pending in the Adams Circuit Court. In the fall of 1895, my husband drew out of the Farmers' and Merchants' Bank at Hannibal, $400, and gave the money to me to come to Taney county to purchase at sheriff's tax sale the lands involved in this suit, which was my father's old farm. My father had previously died leaving my mother and eight brothers and sisters as heirs. I kept the $400 for two or three days, and found that I would not be able to make the trip from Hannibal to Taney county to attend the sheriff's sale of this land, and so I gave the $400 (together with $100 additional, which I had saved out of the house expenses, and which had been given to me by my husband) to my husband, C. W. Viers, who brought the money to Taney county and bought the land involved in this suit. It is my land, purchased partly with my own money and partly with the money given to me by my husband. My husband was engaged in the saloon business at Quincy, Illinois. He left the saloon and fixtures for me to dispose of, which I did. I then went into the saloon business with a gentleman in Quincy. I was in the saloon business about three weeks. I sold out and have been sewing some since. My object in buying the land was to get my mother off of the land and get her to make her home with me. My mother, brother and sister were living on the land at the time it was sold for taxes. They would not give possession after the tax sale, and my husband, C. W. Viers, was obliged to bring an ejectment suit against them before they would get off.

My mother never has made her home with me since I have been married.''

The plaintiff then testified as follows:

''It is not true that I drew $400 out of the Farmers' and Merchants' Bank at Hannibal, and gave to my wife at any time as testified to by her. She never gave me $100, $400, $500 or any amount with which to buy the land, but I drew from the Farmers' and Merchants' Bank on my own money, which I brought direct from the Farmers' and Merchants' Bank to Forsythe, and purchased the land with it, paid the taxes and other expenses out of this money which was all my own. I never drew $400 or any other amount out of the Farmers' and Merchants' Bank at Hannibal, or any other bank, and gave to my wife, at any time.''

There is some conflict in the testimony as to who furnished the purchase money for the purchase of the land in question, plaintiff testifying that he did, while defendant testified that she did, but conceding for the purposes of this case that plaintiff furnished it, it is well settled that ''where the husband purchases real property with his own funds and causes the same to be conveyed to his wife'' (as in the case at bar, and there is no intimation in the deed that it is to be held in trust for him), ''a prima facie case is made out that the husband intended the conveyance to be a provision, or settlement for the wife, and not a resulting trust, as would arise, if no such relation existed.'' [Schuster v. Schuster, 93 Mo. 438; Seibold v. Christman, 75 Mo. 308; Perry on Trusts, secs. 143-147; Pomeroy's Eq. Jur., sec. 1039; Ilgenfritz v. Ilgenfritz, 116 Mo. 429; Curd v. Brown, 148 Mo. 82; Woodward v. Woodward, 148 Mo. 241.]

It is also well settled that this presumption may be overcome by parol testimony, but the evidence in order to do so must be clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor. [Woodford v. Stephens, 51

Mo. 443; Forrester v. Scoville, 51 Mo. 268; Modrell v. Riddle, 82 Mo. 31; Sweet v. Owens, 109 Mo. 1; Rogers v. Rogers, 87 Mo. 257; Railroad v. McCarty, 97 Mo. 214; Taylor v. Von Schraeder, 107 Mo. 206; Curd v. Brown, 148 Mo. 82.]

The question for solution is as to whether or not the evidence, when taken in connection with the deeds in evidence, all of which were made at the request of plaintiff, none of them containing words creating a trust, or in any way restricting defendant's title, is sufficient to overcome the presumption arising from the facts and circumstances in evidence in favor of the position that it was intended by plaintiff that said conveyances should be a provision or settlement for his wife, and not a resulting trust. All of the evidence adduced by plaintiff tending to overcome these presumptions was his own testimony to the effect that he bought the land with his own means, and had it deeded to her with the intention of making it his homestead, and that of his son, who testified that "this land was bought and placed in the name of Lillie M. Viers, and paid for by his father with his own money for the express purpose of making it his future home."

Defendant testified in her own behalf, that the land in question was her father's old farm, that he had died leaving her mother and eight children, brothers and sisters, as his heirs; that the property was to be sold for delinquent taxes, and that it was bought for her by her husband, partly with her own money, and partly with money given to her by her husband, the plaintiff. Our conclusion therefore is, that at the time of the purchase of the land and at the time plaintiff had the deed therefor made to defendant, he intended the property as a settlement upon her, or as a provision for her, and that the evidence adduced for the purpose of overcoming the presumption that he intended to do so, falls far short of being clear, strong, unequivocal and so definite and positive as to leave no room for doubt in

the mind of the chancellor, but tends strongly to the contrary. No error was committed in the decree.

The judgment is affirmed. All of this Division concur.